IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:20-cr-86 |
| Plaintiff, | Judge Susan J. Dlott |
| v. | ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND |
| ROBERT HUNTER, | CANCELLING *FRANKS* HEARING |
| Defendant. | |

This matter is before the Court on Defendant's Motion to Suppress and for *Franks*[1] Hearing (Doc. 27). The United States opposes the motion (Doc. 30).

A grand jury indicted Defendant Robert Hunter on charges of possession of heroin/fentanyl and marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Doc. 1.) All charges stem from items discovered in a police search of an apartment at 3806 Dina Terrace in Cheviot, Ohio. Hunter contends that the affidavit underlying the search warrant contains false information. Without the false information, Hunter argues, the search lacked probable cause so the fruits of that search must be suppressed. For the reasons that follow, Defendant's motion will be **DENIED**.

I. BACKGROUND

On April 17, 2020, a shooting occurred in Cincinnati, Ohio, where witnesses described a specific gold Hyundai leaving the scene. Cincinnati Police Department ("CPD") Officers located the gold Hyundai—which had been reported stolen—and witnessed a man now known to

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

1

be Robert Hunter park the gold Hyundai on the street and then enter a copper Volvo. Officers stopped the Volvo for excessive window tint and traffic violations. Robert Hunter's girlfriend drove the Volvo with Hunter and two others as passengers. One passenger possessed a gun on his person, the glove compartment contained an extended magazine, and Hunter possessed the keys to the stolen gold Hyundai seen leaving the shooting.

Officers learned that Hunter resided with his girlfriend and her young children at 3806 Dina Terrace, apartment 5, in Cheviot, Ohio. Officers surveilled that address for an unspecified period of time.

### A. Search Warrant Affidavit

The affidavit underlying the search warrant provided, in part:

> [1] On May 14, 2020 Officers were conducting surveillance at 3806 Dina Terrace in Cheviot Ohio. Officers observed Robert Hunter come from the location and throw trash in the dumpster, and then go back inside the location. A short time later Robert Hunter and girlfriend Latonia Harper exited the apartment building and got into the copper Volvo bearing OH/HFL7129. This vehicle from previous investigation is known to belong to the girlfriend of Robert Hunter. Both got into the vehicle and sat.
>
> [2] Robert Hunter then exited the vehicle and was observed by police on his cell phone walking through the parking lot. Officers then observed Robert Hunter conduct a hand to hand drug transaction with another vehicle in the parking lot. That vehicle bearing OH/HXR7693 was stopped by police at 3840 Applegate. A male white 56 years of age was in possession of heroin/fentanyl and positively identified Robert Hunter as the individual that sold him the contraband. Officers still conducting surveillance at the location observed Robert Hunter and Latonia Harper go back inside the apartment after he made the deal with the male white.
>
> [3] Officers then observed Robert Hunter come back out of the apartment complex again on his cell phone looking around. Robert Hunter walked to the rear of the apartment complex again to conduct a [sic] hand to hand drug transactions with two white females. Robert Hunter then went back into the location.

2

> [4] Finally, officers observed Robert Hunter come out of the location again on his cell phone and walked to the rear of the building to conduct hand to hand drug transactions. Additional heroin/fentanyl was recovered from Hunter's customers. Officers approached Robert Hunter and he attempted to flee police. Officers observed Robert Hunter discarding contraband while fleeing on foot from police. He was taken into custody without further incident.

(Doc. 27, Exh. 1 at PageID 61.)

According to CPD Officer Kerri Maloney's affidavit, Officers secured the apartment at 3806 Dina Terrace. Hunter's girlfriend refused the Officers' request to search the apartment, admitted that Hunter had stayed there the previous night, and "told police there maybe [sic] a gun and additional drugs in her residence because she does not know what Robert Hunter does while in the apartment." (*Id.*)

Based on this affidavit, Officers obtained a search warrant for the Dina Terrace apartment. During the May 14, 2020 search, Officers located heroin/fentanyl, U.S. currency, a digital scale, a loaded Glock 27 .40 caliber handgun, Hunter's wallet and identification, and a loaded Glock magazine. Officers also found marijuana packaged for sale in a closet with Hunter's clothing.

### B. Motion for *Franks* Hearing

Hunter now moves to suppress all evidence found during the search of the Dina Terrace apartment. (Doc. 27.) In support of his motion, Hunter offers his own affidavit that provides in its entirety:

> 1. I have reviewed the sworn affidavit of Officer Kerri Maloney of the Cincinnati Police Department, attached as Exhibit 1. Bates No. Hunter_0012–0015.
> 2. I have reviewed the paragraph marked (1) on page 0014. I did not conduct a hang-to-hand drug transaction with a white male in the parking lot, as alleged in paragraph (1) on page 0014.
> 3. I have reviewed the paragraph marked (2) on page 0014. I did not conduct a hand-to-hand drug transaction with two white females

3

in the rear of the apartment complex, as alleged in paragraph (2) on page 0014.

4. I have reviewed the paragraph marked (3) on page 0014. I did not conduct a hand-to-hand drug transaction at the rear of the building. Further, I did not attempt to flee from officers or discard contraband, as alleged in paragraph (3) on page 0014.

Further affiant sayeth naught. /s/ Robert Hunter

(Hunter Aff., Doc. 27, Exh. 2 at PageID 63.)[2]

Based solely on his affidavit, Hunter contends that Officer Maloney's affidavit in support of the search warrant contains false information offered knowingly, intentionally, or with reckless disregard for the truth. (*Id.* at PageID 56.) According to Hunter, he is entitled to an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and, ultimately, suppression of the evidence located during the search.

The Government disagrees. It argues that Hunter has failed to produce evidence sufficient to justify a *Franks* hearing, and his motion must be denied. (Doc. 30.)

## II. PROBABLE CAUSE

Pursuant to the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Probable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (quoting *Kaley v. United States*, 571 U.S. 320, 338, (2014)). As the Sixth Circuit opined:

> Probable cause exists if the facts, circumstances, and "reasonably trustworthy information" would allow a person "of reasonable caution" to believe that a crime has been committed. *Brinegar v.*

---

[2] In quoting the search warrant affidavit above, the Court inserted numbers one through three matching the numbers hand-written on Defendant's Exhibit 1 at PageID 61. However, in Hunter's affidavit, he references facts stated in paragraphs that do not match the numbers hand-written on Defendant's Exhibit 1. The Court included the next paragraph from the search warrant affidavit and assigned it number four as it seemed to correspond with the subject matter of Hunter's affidavit. The Court will proceed on the assumption that Defendant simply misnumbered the search warrant affidavit paragraphs, and Hunter actually attacks search warrant paragraphs two through four.

4

> *United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). This is "a practical, nontechnical conception," *ibid.*, and it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*United States v. Neuhard*, 770 F. App'x 251, 253 (6th Cir.), *cert. denied*, 140 S. Ct. 570 (2019).

In determining whether a search warrant is supported by probable cause, a court may consider only the "four corners of the affidavit." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009); *United States v. Ruffin*, 979 F.3d 528, 531–32 (6th Cir. 2020). Thus, "information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (quoting *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)).

Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Ruffin*, 979 F.3d at 531. Thus, "the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

There is little question that the search warrant affidavit at issue in this case establishes probable cause to search the Dina Terrace apartment. According to the affidavit, Officers surveilling the apartment: (1) observed Hunter enter and exit the building several times; (2) observed Hunter conduct multiple hand-to-hand drug deals at the rear of the building and in the adjacent parking lot; (3) removed heroin/fentanyl from Hunter's alleged customers; (4) learned from one alleged customer stopped nearby that Hunter sold him the heroin/fentanyl in his

5

possession; and (5) interviewed Hunter's girlfriend who admitted she and Hunter lived in apartment five "as boyfriend and girlfriend." (Doc. 27 at PageID 61.)

Hunter does not argue that the affidavit, viewed in its entirety, lacks probable cause. Rather, Hunter contends that certain parts of the affidavit contain false information, and he is entitled to a *Franks* hearing. (Doc. 27.)

### III. ENTITLEMENT TO A *FRANKS* HEARING

"An affidavit supporting a search warrant is presumed valid." *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016) (citing *Franks*, 438 U.S. at 171). When a defendant contends that a search warrant affidavit includes false information, he is entitled to a *Franks* hearing only if:

> he makes a "substantial preliminary showing" that (1) the affiant knowingly or recklessly included a false statement in—or omitted material information from—the affidavit, and (2) the allegedly false statement or material omission "is necessary to the probable cause finding." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir.2013) (citing *Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674). The defendant has a "heavy burden," as he must "point to specific false statements that he claims were made intentionally or with reckless disregard for the truth" and "accompany his allegations with an offer of proof." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990) (citing *Franks*, 438 U.S. at 171, 98 S.Ct. 2674).

*Id.*; *see also United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (reiterating these same requirements). "Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information." *Bateman*, 945 F.3d at 1008 (6th Cir. 2019) (quoting *United States v. Archibald*, 685 F.3d 553, 558–59 (6th Cir. 2012)).

Furthermore, "[a] law enforcement officer's statement is only considered to be issued with 'reckless disregard for the truth' if a defendant shows that the affiant subjectively

6

'entertain[ed] serious doubts as to the truth of his [or her] allegations.'" *Id.* (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)) (alterations in original). An affiant's negligence or innocent mistake is insufficient to warrant a *Franks* hearing as "*Franks* recognizes that the information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998)).

Several courts, including this one, have determined that a defendant's affidavit stating simply that he did not commit the acts alleged "is hardly the 'substantial preliminary showing' required under *Franks*." *Rodriguez-Suazo*, 346 F.3d at 648 (6th Cir. 2003) (Even if some information in the search warrant affidavit is ultimately proven false, the defendant's affidavit "does not equate to proof that the affiant lied or was recklessly indifferent to the truth."); *Bateman*, 945 F.3d at 1010 (Accepting defendant's claim that agent's descriptions contained falsehoods, defendant failed to make substantial showing that the agent "knowingly, intentionally, or with reckless disregard to the truth, included such falsehoods or material omissions in his affidavit."); *United States v. Hill*, No. 1:20-cr-12, 2021 WL 1305381, at *7 (S.D. Ohio Apr. 7, 2021) ("[E]ven if the information in the search warrant was ultimately false, the defendant provided no evidence that the Affiant intentionally or recklessly misrepresented facts in order to secure the search warrant."); *United States v. Sheridan*, No. 5:18CR525, 2020 WL 1025162, at *3 (N.D. Ohio Mar. 3, 2020) (Defendant's "bare statement that he did not sell narcotics to the informant during the relevant period" does not entitle him to a *Franks* hearing because it fails to preliminarily show that the affiant intentionally or recklessly provided false statements.).

In the case at bar, Hunter's brief affidavit states only that he did not conduct the hand-to-hand drug transactions Officers swore they observed in the parking lot and at the rear of the residence and that he did not attempt to flee from Officers or discard contraband while doing so. (Doc. 27 at PageID 63.) He offers no evidence whatsoever that Officer Maloney intentionally or recklessly provided false statements to secure the search warrant. Without the required substantial preliminary showing that Officer Maloney knowingly or recklessly included a materially false statement in the affidavit, Hunter is not entitled to a *Franks* hearing.

## IV. CONCLUSION

For the reasons set forth above, Defendant Robert Hunter's Motion to Suppress and for *Franks* hearing (Doc. 27) is **DENIED**. The *Franks* hearing tentatively scheduled for July 14, 2021 is **CANCELLED**.

**IT IS SO ORDERED.**

Dated: July 6, 2021

Judge Susan J. Dlott
United States District Court